UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION


UNITED STATES OF AMERICA    )    DOCKET NO. 3:08-CR-210
    )
    )
    vs.    )
    )
ANTHONY MINCEY    )
_____ )


TRANSCRIPT OF SENTENCING HEARING
BEFORE THE HONORABLE ROBERT J. CONRAD, JR.
UNITED STATES CHIEF DISTRICT COURT JUDGE
JULY 29, 2009

APPEARANCES:

On Behalf of the Government:

    ROBERT GLEASON
    Assistant United States Attorney
    227 West Trade Street, Suite 1700
    Charlotte, North Carolina 28202

On Behalf of the Defendant:

    SCOTT GSELL
    212 South Tryon Street
    Suite 1360
    Charlotte, North Carolina 28281

LAURA ANDERSEN, RMR
Official Court Reporter
United States District Court
Charlotte, North Carolina

1                          I N D E X

2    GOVERNMENT'S WITNESSES:

3          MARK HEATH
                 Direct Examination by Mr. Gleason        13, 23
4                Cross-Examination by Mr. Gsell           20

5                          * * * * * *

6                          E X H I B I T S

7    GOVERNMENT'S EXHIBITS:
8    NO.   DESCRIPTION                      MARKED      RECEIVED
     1     Loss listing Wachovia            16          17
9    2     Loss listing individuals         17          19

10                         * * * * * *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Case 3:08-cr-00210-RJC   Document 57   Filed 11/06/09   Page 2 of 46

1              P R O C E E D I N G S

2              THE COURT:  We're here in the matter of United

3    States V Anthony Mincey, for purposes of sentencing.

4              Mr. Mincey plead guilty before a magistrate judge

5    on January 30th of this year.  The magistrate judge asked

6    some questions under oath, and found that his plea was

7    knowingly and voluntarily made.  There were no objections

8    filed to the findings of the magistrate judge, and this

9    court will adopt them as its own.

10             Mr. Gleason, is there a factual basis to support

11   the entry of a plea of guilty in this case?

12             MR. GLEASON:  Your Honor, the parties have

13   stipulated in the Plea Agreement that there is a factual

14   basis for the guilty plea.  And that the court can use the

15   conduct as set out in the Presentencing Report with the

16   exception of any objections.

17             THE COURT:  Thank you.

18             You so stipulate, Mr. Gsell?

19             MR. GSELL:  So stipulated, Your Honor.

20             THE COURT:  Based upon that stipulation, and the

21   offense conduct as set forth in the Presentence Report, as

22   well as Mr. Mincey's plea of guilty before the magistrate

23   judge, the court finds that there is a factual basis for the

24   entry of the pleas of guilty in this case.

25             Mr. Mincey, your case was referred to the Federal

1  Probation Department for the purpose of preparing a

2  Presentence Report, which the Court has received and

3  reviewed.  Have you had a chance to read the Presentence

4  Report?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  Do you believe you understand it?

7              THE DEFENDANT:  Yes, sir.

8              THE COURT:  Have you had enough time to go over

9  the Presentence Report with your attorney?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  You may sit down at this time.

12             THE DEFENDANT:  (Complies.)

13             THE COURT:  And Mr. Gsell, I will be glad to hear

14 from you on objections to the Presentence Report.

15             MR. GSELL:  Thank you, Your Honor.

16             I filed a number of objections.  But there's

17 basically two areas that the objections deal with.  One

18 deals with the dollar loss.

19             And the basis of that objection is that the

20 defendant and defense counsel don't have access to the

21 documents that the Federal Probation Office sends out to the

22 victims asking for their loss calculations.

23             My understanding is that those documents are sent

24 out by the probation office.  The victims either do or do

25 not send them in.  If they're sent in, probation reviews

1  those numbers, and inserts those numbers into the loss

2  calculations.

3          The objection for Mr. Mincey is that I don't know

4  whether or not the numbers contained in the Presentence

5  Report -- because we don't have access to the documents, and

6  we don't know definitively how those numbers are calculated,

7  I cannot determine if those amounts contain any dollar

8  amounts that are prohibited under the Guidelines.

9          I don't know whether or not there's fees in there

10  that are inappropriate.  I don't know if there's claimed

11  losses that are inappropriate under the Guidelines.  And

12  that essentially is the basis.

13          We do not have access to those records.  We're in

14  essence having to rely upon the number in the Presentence

15  Report, without having an opportunity to review it and/or

16  challenge it in any meaningful way.

17          THE COURT:  There would have to be fees in the

18  amount of over 30,000 -- there would have to be -- in terms

19  of the loss amount reported by the various victims in

20  paragraph 26 of the Presentence Report, for your argument to

21  make a difference in terms of loss amounts, there would have

22  to be in excess of, I guess $30,000.

23          MR. GSELL:  It is a high number, Your Honor.  The

24  argument simply is, I do not know how they arrived at those

25  numbers.  And I'm not sure exactly how that number was

1  totaled up.

2          Again, and that is simply because we do not have

3  access to those reports.  We do not have the opportunity to

4  review it and make any challenges to specific line items

5  that we think may be inappropriate.  But that is the basis

6  for that end of the objection.

7          The other basis for the objection is the number of

8  victims.  In reading 2B1.1, Your Honor, victim is defined

9  as, "any person who sustained any part of the actual loss

10  determined under subsection (b)(1), or an individual who

11  sustained bodily injury".  We don't have to worry about

12  bodily injury here.

13          But in reading the investigation reports, and the

14  Presentence Report, Your Honor, it would appear that the

15  actual individuals who had their identity obtained, and used

16  for the opening of credit accounts, and making purchases, it

17  would appear that each of those individuals have in fact

18  been compensated and made whole.  Therefore they would not

19  have sustained any actual loss.

20          The Presentence Report, Your Honor, the paragraph

21  dealing with restitution, that's paragraph 94 on page 24,

22  lists five institutions, Citi Group, Wachovia, Target, G.E.

23  Money Bank and Macy's, as the victims who are entitled to

24  restitution.

25          The argument that I'm making on behalf of

1    Mr. Mincey is, that in order to be determined to be a

2    victim, they have to have sustained an actual loss.

3            The individual people, again, who had their

4    identities taken, have not sustained an actual loss, because

5    they apparently have been compensated.

6            The institutions which are persons under the

7    Guidelines, total only five.  And they're the ones who have

8    sustained the loss.

9            THE COURT:  So in your theory, if my

10   identification is taken from me and used in an unauthorized

11   fashion, and it costs me days and months to reestablish my

12   credit, if I'm compensated for that, the use of my

13   identification, then I'm not considered a victim under the

14   Guidelines?

15           MR. GSELL:  My argument is, is that under the

16   Guidelines, they have to have sustained an actual loss.  If

17   you are in fact compensated, then you have not sustained an

18   actual loss.

19           THE COURT:  Well, and then you make the

20   extrapolation from that, that if you have not sustained an

21   actual loss, even though you've been victimized, you're not

22   a victim.

23           MR. GSELL:  Correct, Your Honor.  I'm just simply

24   reading the definition from 2B1.1.  And I think that's what

25   we need to be bound by.  We do not have to go to a

1    generalization as to what a victim is or --

2            THE COURT:  Go ahead and show me where in 2B1.1

3    you find support for your argument.

4            MR. GSELL:  It comes in, in the Application Notes,

5    Your Honor.  Just before -- it's part of application note

6    one, definitions.  And I believe it is at the very end of

7    the paragraph.  Just before paragraph two, where victim is

8    defined.

9            THE COURT:  "Any person who sustained any part of

10   the actual loss determined under subsection (b)(1)."

11           And so where in there does it say if you've been

12   reimbursed, that you're no longer considered a victim?

13           MR. GSELL:  It doesn't say in there, Your Honor,

14   but sustained.  You have sustained or suffered an actual

15   loss.  That's what it says, actual loss.

16           And putting just a normal every day meaning to

17   actual, means is that it would still be there, and it has

18   not been compensated for.

19           And again, in this particular instance, based upon

20   the information in the Presentence Report, the persons who

21   have actually sustained a loss, are the five institutions

22   listed at paragraph 96.

23           THE COURT:  But isn't it true in any type of

24   situation, if you have -- let's say you have damage to your

25   home and you have insurance.  You've sustained a loss, so

1   you make a claim for reimbursement; you get reimbursed.

2   Does that mean you never had a loss?  I'm trying to --

3           MR. GSELL:  You've sustained damage.  You would

4   not have a loss, unless and until in that example, the

5   insurance company would have denied the claim, or only paid

6   partial claim.

7           And taking that one step further, Your Honor, if

8   you receive, if somebody throws a baseball through your

9   window and your insurance company pays for the window, you

10  do not have the right then to turn around and sue the

11  individual who threw the baseball through the window,

12  because there are no damages.  You have in fact been

13  compensated.

14          THE COURT:  All right.  What says the government?

15          MR. GLEASON:  Your Honor, first as to the loss

16  amount, the cutoff for the enhancement that's going to apply

17  for the defendant, kicks in at $30,000 of loss amount.  And

18  here, the amount of loss is over $64,000 in this case as

19  calculated by the PSR.

20          So, Your Honor, it's hard to believe that if there

21  were any fees or late penalties, which the government

22  contends that there are not, that they would be of such

23  amount that would bring it below the $30,000 threshold.

24          Your Honor, as far as the number of victims, Your

25  Honor, we have in this case, victims who are individual

1   people, as well as corporations, all of which are victims in

2   that they have suffered a loss on account of the fraud

3   committed by this defendant.

4           And, Your Honor, those people who had their

5   identity stolen, and who had their credit ruined, or their

6   credit damaged by the defendant's actions, are victims.

7   They are people who are directly affected, and seriously

8   affected by his offenses.

9           Now, the fact that these victims may have received

10  compensation to ameliorate their financial loss, that does

11  not fix the damage done to their credit.  That does not

12  address the lost time, the aggravation, the loss of peace of

13  mind created by having one's identity stolen.  And, Your

14  Honor, that is a genuine loss.

15          In fact, the law now recognizes restitution for

16  18, U.S. Code, 1028(A) aggravated identity theft, and 18,

17  U.S. Code, 1028(A)(7) conventional identity theft, for the

18  amount of time lost in trying to repair one's credit.

19          That an individual person can in fact get

20  restitution for these identity offenses -- these identity

21  theft offenses -- for the amount of time that they have to

22  spend trying to fix their credit, waiting on the telephone,

23  waiting for an answer with credit bureaus, trying to get

24  things straightened.

25          So Congress has recognized that as a loss for

1   which someone could receive restitution.

2           And in doing so, has recognized the genuine loss

3   involved in the loss of one's identity, and the loss of

4   one's time in trying to repair one's credit.

5           So, Your Honor, the government would contend that,

6   in fact, the individual people, as well as the corporations,

7   are indeed victims in this case.  And that the number is

8   well above the threshold of ten victims, for the purposes of

9   the enhancements.

10          THE COURT:  Mr. Gleason, I tend to agree with your

11  argument, conceptually, that actual loss means a reasonably

12  foreseeable pecuniary harm.

13          And pecuniary harm is defined as monetary, or

14  something that is readily measurable in money.

15          And certainly lost time, in terms of

16  establishing -- reestablishing credit, and those types of

17  efforts can be measurable in money.  And so could,

18  conceptually, be an actual loss.

19          Where is the evidence in this case of more than

20  ten, with respect to victims who have actually sustained or

21  sustained actual loss?  Assuming your argument is true,

22  conceptually, where's the evidence of it?

23          MR. GLEASON:  Well, Your Honor, in the discovery

24  that was provided to defense counsel, just based upon the

25  losses that were ultimately paid for by Wachovia Bank,

Laura Andersen, RMR 704-350-7493

1    there's a listing of Wachovia Bank, plus more than ten

2    individual victims.  And that was in the discovery in this

3    case.

4              PROBATION OFFICER:  Your Honor, if I may approach?

5              THE COURT:  You may.

6    (Probation officer and Court conferring.)

7              THE COURT:  So, Mr. Gleason, your argument is that

8    if you provided something in discovery, that this court

9    would be able to rely upon it at sentencing, even though

10   it's not part of the Presentence Report, or anything else

11   that I know of in front of me.  How can I find by a

12   preponderance that there are more than ten victims?

13             MR. GLEASON:  Well, Your Honor, I can offer that

14   document into evidence.  I have a witness who is present in

15   the courtroom, my case agent who can testify as to the

16   number of victims in this case, could authenticate the

17   document, and could identify it.

18             THE COURT:  Well, it's up to you.  I mean, you

19   have the burden to show by a preponderance.  And I'm stuck

20   here with an issue where it appears to me that common sense

21   would indicate that there are more than ten victims here.

22   But from an evidentiary standpoint, I don't know that that's

23   been established.

24             MR. GLEASON:  Well, Your Honor, we would then call

25   to the stand, our case agent, Mark Heath.

1  THEREUPON, MARK HEATH, being first duly sworn, testified as

2  follows during DIRECT EXAMINATION BY MR. GLEASON:

3  Q.  Okay.  Sir, please state your full name for the court

4  record.

5  A.  My name is Mark Heath.

6  Q.  And for the record, what is your occupation?

7  A.  I'm a U.S. postal inspector.

8  Q.  And how long have you served as a United States postal

9  inspector?

10  A.  For approximately seven or eight years.

11  Q.  Agent Heath, have you been involved in the

12  investigation of defendant Anthony Mincey?

13  A.  Yes.

14  Q.  And during the course of the investigation, did you

15  develop evidence that the defendant committed identity theft

16  and aggravated identity theft in the Western District of

17  North Carolina?

18  A.  Yes, sir.

19  Q.  Could you please tell the Court what your investigation

20  revealed regarding that fraud?

21  A.  The investigation revealed that Mr. Mincey and his

22  spouse, were conducting a scheme of account takeovers, as

23  well as fraud app -- credit cards -- fraudulent applications

24  of credit cards using stolen identities.

25  Q.  Can you briefly describe what account takeovers means?

1   A.   An account takeover would be where the individual

2   claims to be the victim, contacts the financial institution

3   or a creditor, supplies -- supplies the personal

4   information, and then effectively changes the account

5   address.

6        In this case, has a duplicate check card mailed out to

7   an address that's you under their control.  Therefore,

8   effectively taking over the victim account.

9   Q.   And did your investigation reveal that the defendant

10  had engaged in that conduct?

11  A.   Yes, sir.

12  Q.   And did your investigation also reveal that the

13  defendant used other people's identities to create accounts?

14  A.   Yes, sir.

15  Q.   And did your investigation reveal that he in fact used

16  those new accounts to make purchases of items?

17  A.   Yes, sir.

18  Q.   And in the course of your investigation, were you able

19  to determine how many victims were victimized by the

20  defendant's fraudulent activities?

21  A.   For my purposes, I believe I identified 17 or 18

22  individual victims, that also includes --

23            MR. GSELL:  Objection as to what he believes, Your

24  Honor; he either knows or he doesn't.

25            THE COURT:  I'll let you Cross on that.

Case 3:08-cr-00210-RJC   Document 57   Filed 11/06/09   Page 14 of 46

1    Overruled.

2           THE WITNESS:  Again, approximately 17 or 18

3    victims.  And that includes financial institutions as well.

4    Q.   (Mr. Gleason) The number of victims would be in excess

5    of ten?

6    A.   Yes, sir.

7    Q.   And that included both corporations and individual

8    people?

9    A.   Yes, sir.

10          MR. GLEASON:  Your Honor, I have proposed

11   documents which I'm going to try to put on the ELMO.  The

12   ELMO is up, and it looks like my screen is now up.  Okay.

13          Does that -- Agent Heath, does that document

14   appear on your screen?

15   A.   Yes, sir.

16   (Thereupon, Government Exhibit 1 was marked for

17   identification.)

18          MR. GLEASON:  Okay.  Counsel, do you have that on

19   your screen?

20          MR. GSELL:  I'm no technological genesis, but I'll

21   give it a whirl.  But I do have the hard copies, Mr.

22   Gleason.

23          MR. GLEASON:  Okay.  All right.  Very good.

24   Q.   Agent Heath, I am now showing you what's been marked

25   for identification purposes as Government Exhibit Number 1,

1   which is on your screen.  Is that still on your screen, sir?

2   A.   Just went out.

3   Q.   Is it up now?

4   A.   Yes, sir.

5        THE COURT:  You can lift that screen up to see it

6   better.

7        THE WITNESS:  Yes, sir.

8   Q.   (Mr. Gleason) I'm showing you a document that's been

9   marked for identification as Government Exhibit Number 1.

10  It is a redacted document.  Can you identify that document?

11  A.   Yes, sir.

12  Q.   And what is that, sir?

13  A.   That is a individual loss listing as provided by

14  Wachovia.

15  Q.   And that listing of losses, does that list individual

16  victims, as well as the loss amount incurred by Wachovia

17  Bank?

18  A.   Yes, sir.  It lists the individual victims and totals

19  the amount of the fraud loss, which is then effectively the

20  fraud loss reimbursed to those victims by the program.

21  Q.   That was known of at that time?

22  A.   Yes, sir.

23  Q.   Now, other than the fact that the document has been

24  redacted, does that appear to be in the same or

25  substantially same condition as when you included that as

1    part of your investigation?

2    A.   Yes, sir.

3             MR. GLEASON:  Your Honor, the government would

4    move Government's Exhibit Number 1 into evidence for

5    purposes of this hearing only.

6             THE COURT:  Any objection?

7             MR. GSELL:  No, Your Honor.

8             THE COURT:  Let it be admitted.

9    (Thereupon, Government Exhibit 1 was received into

10   Evidence.)

11   (Thereupon, Government Exhibit 2 was marked for

12   identification.)

13   Q.   (Mr. Gleason) Agent Heath, I'm now putting up

14   Government Exhibit Number 2, which has been marked for

15   identification purposes.  Can you identify that document?

16   A.   I --

17   Q.   Is that document the same as Government Exhibit Number

18   1, with the names revealed?

19   A.   I believe it is, yes, sir.

20   Q.   Is that the same as Government Exhibit Number 1?

21   A.   Yes.

22   Q.   But for the fact that the names are not redacted?

23   A.   Yes, it is.

24   Q.   How many individual victims are listed in that

25   document?

1          MR. GSELL:  Well, object to the use of the word

2    victim, Your Honor.

3    Q.   (Mr. Gleason) How many individuals are listed in the

4    document?

5    A.   There are 16 individuals listed on that document.

6    Q.   And did your investigation reveal that these are people

7    who had incurred a direct loss due to the fraud committed by

8    the defendant?

9    A.   Yes, sir.

10   Q.   And does that document contain a column showing the

11   amount of loss per individual?

12   A.   Yes, sir.

13   Q.   The tally itself, would that be the total amount of

14   loss?

15   A.   Yes.

16   Q.   Now, the people that are listed there, are you aware of

17   whether any of those people incurred damage to their credit?

18   A.   Yes, sir.  I mean, each of these individuals were

19   victims of identity theft and account takeover.  So there

20   was some significant time spent by each individual, filing a

21   police report, contacting their financial institutions to

22   get that matter corrected.

23   Q.   In an effort to correct their credit?

24   A.   Yes.

25          MR. GLEASON:  Your Honor, the Government would

Case 3:08-cr-00210-RJC   Document 57   Filed 11/06/09   Page 18 of 46

1   move to admit Government Number 2 into evidence.

2             THE COURT:  Any objection?

3             MR. GSELL:  No, Your Honor.

4             THE COURT:  Let it be admitted.

5   (Thereupon, Government Exhibit 2 was received into

6   Evidence.)

7   Q.   (Mr. Gleason) Agent Heath, the loss amounts that appear

8   in the Government's Exhibit 1 and 2, based upon your

9   investigation, would that be actual loss amounts?

10  A.   That was a portion of the actual loss amount, yes.

11  Q.   But for those individuals, would that represent the

12  actual loss amount?

13  A.   Yes, sir.

14  Q.   And each of those people listed in Government Exhibit

15  Number 1 and 2, were they directly affected by the

16  defendant's fraud?

17            MR. GSELL:  I'm going to object, Your Honor, calls

18  for speculation.

19            THE COURT:  Overruled.

20            THE WITNESS:  Yes, they were.

21  Q.   (Mr. Gleason) Now, in addition to those individual

22  people, did your investigation reveal whether there were any

23  corporate victims?

24  A.   Yes, there were.

25  Q.   Did the investigation reveal that there were any

1    corporations that were directly affected by the defendant's

2    fraud?

3    A.    Yes, sir.

4    Q.    And according to your investigation, how many

5    corporations were also directly affected by the defendant's

6    conduct?

7    A.    In this investigation there is four financial

8    institutions that directly suffered a financial loss related

9    to this fraud.

10   Q.    So the total number of individuals and/or corporations

11   that were directly affected by the defendant's fraud is more

12   than ten?

13   A.    Yes, sir.

14          MR. GLEASON:  Your Honor, no further questions

15   pertaining to this issue.

16          THE COURT:  Any Cross?

17          MR. GSELL:  Yes, Your Honor.

18   CROSS-EXAMINATION BY MR. GSELL:

19   Q.    Do you have Exhibit 2 in front of you?

20   A.    No, I don't.

21   Q.    Can you put that up on mine?

22          Do you have it in front of you?

23   A.    Yes, sir.

24   Q.    Okay.  There's an individual, last name "Alexander", at

25   the very top?

1   A.   Yes.

2   Q.   Okay.  And do you see the column entitled "amount"?

3   A.   Yes.

4   Q.   What number is in that?

5   A.   Zero.

6   Q.   And then there's a -- there's two Jarvis' on there.

7   Talking about the first one with the name beginning with the

8   letter "C".  Do you see that about midway down?

9   A.   Yes.

10  Q.   Okay.  And what's the dollar amount in the amount

11  column?

12  A.   "Zero".

13  Q.   And right underneath that is a "Johnson"?

14  A.   Yes.

15  Q.   What amount is in that amount column?

16  A.   "Zero".

17  Q.   Last name "Young".  That's also a zero in the amount

18  column?

19  A.   Yes, sir.

20  Q.   Same thing for "Peppers"?

21  A.   Yes, sir.

22  Q.   Same thing for "Smith"?

23  A.   Yes, sir.

24  Q.   Same thing for "Anderson"?

25  A.   Yes, sir.

1  Q.   And the total in the amount column is $29,925.12,

2  correct?

3  A.   In this Government Exhibit Number 2 is $29,538.12.

4  Q.   Going back to that exhibit, Agent, looking at those

5  individuals who have placed a dollar amount in that amount

6  column, and those individuals with a zero amount in the

7  amount column, there's only eight with an actual number

8  higher than zero, correct?

9  A.   Yes.

10 Q.   And then the amount that Wachovia -- well, let me ask

11 you this, do you understand that Wachovia is seeking

12 restitution for $29,925.12?

13 A.   Yes, sir.

14 Q.   Okay.  And that amount, 29,538.12, isn't that

15 encompassed in that amount that Wachovia is seeking

16 restitution?

17 A.   Could you repeat the question?

18 Q.   Sure.  It looks like these individuals sustained, or

19 claimed some dollar loss, correct?

20 A.   Yes.

21 Q.   Is it your understanding that Wachovia has paid those

22 people?

23 A.   Yes.

24 Q.   Okay.  And then Wachovia is turning around and claiming

25 that as a loss, correct?

1   A.   That's correct.

2   Q.   Okay.  So a number of people on this list suffered no

3   loss.  And those that did suffer a loss had been

4   compensated, correct?

5   A.   That is correct.

6   Q.   Okay.  And nowhere on here does it say how much they're

7   claiming for time spent repairing credit or anything like

8   that, correct?

9   A.   No.

10  Q.   Okay.  So to the best of your knowledge, the people on

11  this list that had a dollar loss, had in fact been fully

12  compensated, correct?

13  A.   Yes.

14            MR. GSELL:  I have no further questions, Your

15  Honor.

16            THE COURT:  Any Redirect?

17            MR. GLEASON:  Yes.

18  REDIRECT EXAMINATION BY MR. GLEASON:

19  Q.   Agent Heath, directing your attention to Government

20  Exhibit 2.  The individuals listed in the first column, did

21  all those people have their identity stolen?

22  A.   Yes.

23  Q.   And did those people in that list, did they have either

24  their accounts taken over, or new accounts opened in their

25  identities?

1  A.    Both.  They were both victims of fraud app credit

2  cards, or new accounts being opened, as well as the accounts

3  being taken over at Wachovia, and other financial

4  institutions.

5  Q.    And the individuals that have a zero dollar amount

6  listed in the amount column, are those people who, in your

7  investigation revealed, incurred no financial loss?

8  A.    There was financial loss related to these victims with

9  other financial institutions.

10      But again, the individual victim was reimbursed by

11  those financial institutions.

12  Q.    But nonetheless, those individuals, even where there

13  was no financial loss, had a loss of their identity?

14  A.    Yes.

15  Q.    Did your investigation reveal that those people had to

16  spend time to correct their credit or straighten out their

17  identity?

18  A.    Yes, sir.

19         MR. GLEASON:  Your Honor, that would be Redirect,

20  going to the issue of the number of victims.

21         THE COURT:  Very well.  You may step down.

22  (Witness excused.)

23         THE COURT:  The government have any other

24  evidence?

25         MR. GLEASON:  Your Honor, pertaining to the number

Case 3:08-cr-00210-RJC   Document 57   Filed 11/06/09   Page 24 of 46

1    of victims, no, Your Honor.  That would be our evidence that

2    there were in fact more than ten, either individuals or

3    corporations that were directly affected by the fraud of the

4    defendant.

5              THE COURT:  And so tell me how you come to the

6    conclusion that there are ten or more victims under the

7    Guidelines?

8              MR. GLEASON:  Well, Your Honor, each of these

9    individuals listed in Government Exhibit Number 2, were

10   directly and seriously affected by the offense conduct of

11   the defendant, and are identifiable as victims for the

12   purposes of the enhancement under the Guidelines.

13             Each of these people listed, there are more than

14   ten listed in Government Exhibit Number 2 -- putting aside

15   the corporations -- each of these individuals had their

16   identities stolen.

17             And these identities were stolen by the defendant.

18   And then, either their accounts were taken over and charges

19   were made on their existing accounts, or their identities

20   were used to open up new accounts where charges were made.

21             So, some of these people incurred a financial loss

22   from that activity, others did not.

23             But, ultimately, all of them are victims.  Because

24   they all suffered a direct and very serious injury to their

25   identities.  All of them had their identities stolen.  They

Case 3:08-cr-00210-RJC   Document 57   Filed 11/06/09   Page 25 of 46

1    had their credit damaged.

2         THE COURT:  How do you deal with the defense

3    argument that a victim is defined as someone who has

4    sustained any part of the actual loss determined under

5    Section (b)(1)?

6         MR. GLEASON:  Well, Your Honor, actual loss, Your

7    Honor, I would contend that if someone had their identity

8    stolen, that's a loss.  That's part of the actual loss in

9    this case, committed with fraud.  And that these people have

10   to spend time to repair their credit, and repair their

11   identities to get their good names back.

12        In fact, Congress has recognized that with 1028(A)

13   aggravated identity theft and 1028(A)(7) that people are

14   entitled to get restitution for their lost time used to

15   correct their credit history, and get their good name and

16   identity back.  So, Your Honor, that would be a genuine

17   loss, and they would in fact share in that loss.

18        THE COURT:  Actual loss is defined under 2B1.1

19   App. Note 3, as "reasonably foreseeable pecuniary harm

20   resulting from the offense".

21        And there seems to be under the Guidelines, a

22   definitional component as to what "actual loss" means.

23        And so how would someone who is not -- doesn't --

24   was never harmed, from a financial standpoint, qualify as

25   someone who has suffered a reasonably foreseeable pecuniary

1   harm?

2           MR. GLEASON:  Your Honor, I think it is a

3   reasonably foreseeable pecuniary harm if someone has their

4   credit damaged.  That person cannot obtain credit, cannot

5   get a loan.  They are charged with bills that they did not

6   incur.  They are sometimes denied employment.

7           THE COURT:  Where is the evidence of that?  I

8   think that's a -- I think -- I come back to conceptually

9   agreeing with you, but wondering where your evidence is of

10  the things that you are saying.

11          I mean, you've indicated that there could be a

12  pecuniary harm if someone had lost their credit, but where

13  is the evidence of that in this record?

14          MR. GLEASON:  Well, it's foreseeable, Your Honor.

15  It's foreseeable pecuniary harm.

16          The witness testified that all the individuals

17  listed in Government Exhibit Number 2, had their identities

18  stolen.  And their identities were used to either overtake

19  their existing accounts, or create new accounts.

20          And the witness testified that these people spent

21  time to correct their credit, correct their good name, and

22  had contacted the police, made reports, had taken steps to

23  try to correct their credit.  That would be a foreseeable

24  pecuniary loss to those individuals.

25          THE COURT:  Thank you.

1          Mr. Gsell.

2          MR. GSELL:  Your Honor, I think that -- my math

3     isn't that great.  But I think if you totaled up the amount

4     of restitution under paragraph 94, that would equal the

5     amount of loss that's set forth in the offense conduct

6     section.

7          And there's no indication in any of the documents

8     that any of these amounts include anything for having to

9     repair credit or take time --

10         THE COURT:  But restitution and loss are two

11    completely different concepts under the Guidelines.

12         MR. GSELL:  Well, Your Honor, I understand that.

13    But I think we have to go by what's included in the report.

14    I mean, that is the purpose of the Presentence Report to put

15    everybody on notice.  And they're saying that the amount of

16    the loss was $64,314.69.

17         And again, it's been a little while, but I think

18    if you add up the amount claimed for restitution, it's going

19    to equal that loss amount.  And there simply is no

20    indication in the report or anything that we've heard today,

21    that any of those amounts include anything for time spent

22    trying to repair credit.

23         I mean, I think if you look at the Government's

24    Exhibit -- Exhibit 2, I believe, though the dollar amounts

25    are the same, those are amounts that the people, I guess

1   essentially were defrauded of, and that Wachovia then turned

2   around and reimbursed them for that amount.

3          I don't see any indication that Wachovia

4   reimbursed those people for time spent making phone calls or

5   anything like that.  I don't necessarily know that that

6   would even be appropriate for Wachovia to reimburse those

7   people for that.

8          So I think we're bound by what's contained in the

9   Presentence Report --

10          THE COURT:  Oh, I don't think we're bound by

11  what's contained in the Presentence Report.  I think if

12  there's an evidentiary support, whether it comes in the

13  Presentence Report, or a witness called by the defense, or a

14  witness called by the prosecution, it's something -- that's

15  reliable, it's something the Court could consider at

16  sentencing.

17          MR. GSELL:  Then I would simply say, Your Honor,

18  that there were no specifics.  A bald statement that they

19  had their identity taken, therefore they must have suffered,

20  they must have spent time.  That's a blanket conclusory

21  statement.

22          So again, my argument is that whoever these

23  individuals were that suffered identity fraud, they have in

24  fact been reimbursed.  There's no separate claim for time

25  spent for phone calls or suffering from bad credit as a

1 result of this incident.

2        I think what we're dealing with here is purely

3 economic. The people claimed the loss. They got

4 reimbursed. Therefore they are not a victim under the

5 Guidelines. Wachovia is a victim, along with the four other

6 institutions. And therefore, five is less than ten. And I

7 do not believe the government has met their burden, even by

8 a preponderance, that there are ten or more victims in this

9 case. As victim is defined in the fraud Guideline.

10        THE COURT: Thank you. It's a very interesting

11 argument that you make, Mr. Gsell. I think there are two

12 aspects of it. One is loss amount, and two is the number of

13 victims.

14        I think the government has met its burden by a

15 preponderance, established loss amount above 30,000.

16        The Court looks to the actual loss amount that is

17 captured in the information contained in the Presentence

18 Report, and in the exhibits today, to clearly show more than

19 30,000.

20        I also believe that the information contained in

21 the Presentence Report, shows that a search of the vehicle

22 indicated -- or the execution of a search warrant indicated

23 lists of 65 other individuals, and 18 separate

24 identification cards, which would also influence the court

25 in terms of intended loss.

Laura Andersen, RMR 704-350-7493

1        In other words, I think the defendants in this
2    case had committed an actual loss of more than $30,000.  And
3    intended to inflict additional losses, as a result of the
4    stolen identities that were found in the defendant's
5    possession.  So I think the government has clearly met the
6    loss amount.
7        A much closer question with respect to the number
8    of victims.  I have before me a First Circuit Case, *United*
9    *States V Stepanian*, which dealt with this issue, most
10   recently as 2009.
11       And in that case the question was, who constituted
12   a victim under 2B1.1.  The defendant's argument was that
13   bank account holders who were reimbursed for their losses,
14   and were not victims for purposes of the multiple victim
15   enhancement, they had been reimbursed, which is essentially
16   large part of the defendant's argument.
17       And the government countered that the victim is
18   not defined by the -- who bears the final burden of the
19   financial loss.  And it's enough that if an individual
20   sustained any part of the loss, before it shifted to another
21   individual or entities.
22       The First Circuit at least indicated that the
23   government had the better of the argument.
24       The most natural reading of the phrase, "sustained
25   any part of".  In the Application Note, definition of victim

Case 3:08-cr-00210-RJC   Document 57   Filed 11/06/09   Page 31 of 46

1    does not have a temporal limit, otherwise indicate that

2    losses must be permanent.

3            There is a circuit split on this question.  I'm

4    not sure how the Fourth Circuit would resolve the exact

5    question.

6            It appears to me, that one of the things that the

7    court can look at in determining actual loss, is the

8    reasonably foreseeable pecuniary harm.

9            And pecuniary harm is defined as monetary harm, or

10   something that can be readily measurable in money; deals

11   with economic harm, not non-economic harm, such as emotional

12   distress and other things.

13           It appears to me from the Presentence Report, that

14   there are at least seven individuals identified who took

15   some effort to try to report the theft of their identities,

16   either through the police or other institutions.  There are

17   also five different institutional groups that the government

18   has proved by a preponderance, were considered victims.

19           And so I think the government -- and then the

20   government's evidence today indicated that there were 17 or

21   18 individuals or institutional victims in the case.

22           I think the government has met its burden by a

23   preponderance to establish ten or more victims.  As I said,

24   it's a close case, but I think the government has met its

25   burden.

```
 1              And so I will overrule the defense objection based
 2    upon the number of victims.
 3              So for purposes of purely consulting the advisory
 4    Guidelines, it appears to the Court, the correct offense
 5    level is a 14, the criminal history category of a V, with
 6    the resulting sentencing range on Count 3 of, 33 to 41
 7    months.
 8              And with respect to Counts Two and Four, as to
 9    each count, there is a 24 month statutory term of
10    imprisonment.
11              Do the parties agree those -- having made the
12    rulings that I have, that those are the correct advisory
13    Guidelines to consult?
14              MR. GSELL:  Those are the correct Guideline
15    calculations, Your Honor, based upon the Court's rulings
16    today.
17              THE COURT:  Very well.
18              MR. GLEASON:  Yes, Your Honor, that's correct.
19              THE COURT:  All right.  Then Mr. Gsell, I will be
20    glad to hear from you on behalf of Mr. Mincey at this time.
21              MR. GSELL:  Thank you, Your Honor.
22              I would start out by directing the Court's
23    attention to paragraph 86, which indicates that the Plea
24    Agreement that was mutually agreed upon between Mr. Mincey
25    and the government, asked the court to run the two
```

1    consecutive sentences concurrently with one another.

2              THE COURT:  Two and Four?

3              MR. GSELL:  Yes, Your Honor.  And that was a

4    bargain that was struck between Mr. Mincey through myself

5    and the government.  And we think that that is fair and just

6    under the circumstances, and certainly pursuant to the

7    negotiation.

8              I would let the court know that Mr. Mincey is 37

9    years old.  He's lived between Georgia and North Carolina

10   most of his adult life.  He does accept responsibility for

11   his conduct, Your Honor.  He has never tried to shuck -- or

12   shirk his responsibility.  When confronted by the agents, he

13   did provide them with information as to where he got the

14   documents from.  Who was involved at his immediate level.

15   And I believe he provided some additional names as to where

16   some of those documents had been obtained from.

17             There was one debriefing session, Your Honor.  I

18   believe that Mr. Mincey provided truthful information.  It

19   may not have risen to the level of substantial assistance,

20   but he did make a good faith effort to cooperate with the

21   government.  And I would ask the court to take that into

22   consideration.

23             Your Honor, the Presentence Report would indicate

24   that Mr. Mincey does have a history of substance abuse.  And

25   we would ask the court to recommend to the Bureau of Prisons

1   that Mr. Mincey be allowed to participate in whatever drug

2   treatment programs may be available to him. And hopefully

3   he can earn some credit on his sentence, as a result of his

4   participation in those programs.

5         While he has been in the Gaston County jail, Your

6   Honor, he has not had the benefit of being able to

7   participate in a drug treatment program.

8         However, to further himself and better himself, he

9   has enrolled and almost completed the GED program over

10   there. And that is despite the fact that the Presentence

11   Report indicates he is a high school graduate. He didn't

12   want to just be sitting around doing absolutely nothing.

13   And he thought that that would be a more constructive use of

14   his time. And that's what he's been doing since he's been

15   in the Gaston County jail.

16         Nonetheless, Your Honor, if the court could

17   recommend participation in any type of vocational or

18   educational programs, we think that that would be a good

19   thing for Mr. Mincey; not only while he's in the custody of

20   the Bureau of Prisons, but it would certainly facilitate his

21   rehabilitation. Once he is released and placed on

22   supervised release, it would certainly make his chances of

23   obtaining gainful and meaningful employment a lot better.

24         He has requested, if the Court would recommend

25   placing him in a facility as close to Charlotte as possible.

1    This is where his family is.  This is where I believe his

2    children are located.  And he doesn't want it to be a

3    terrible burden on them to visit with them.  And he does

4    want and hopes to be able to maintain the relationships that

5    he has fostered with them.

6              Again, Your Honor, he does accept responsibility.

7    There is no way that he would stand here and deny his

8    actions.

9              He would ask the Court simply to take all of that

10   into account, including the terms and conditions of the Plea

11   Agreement, and impose a sentence in accordance with that.

12             Mr. Mincey has informed me, Your Honor, that he

13   does wish to address the Court at the appropriate time.

14             THE COURT:  Thank you, Mr. Gsell.

15             I'll be glad to hear from you, Mr. Mincey.

16             THE DEFENDANT:  Your Honor, I would like to say

17   that I accept responsibility for my actions.  No way am I

18   trying to elude any type of further sentencing, or

19   incarceration that may come to me.  I realize what I did was

20   wrong.  And I apologize for the time that the investigators

21   and the detectives had to spend to try to search out the

22   situation.

23             Like my attorney, Mr. Gsell has said, I've been in

24   the Gaston County jail, I enrolled in the GED, you know,

25   tried to refresh myself.  And not just sit around and waste

1   time being there.

2          And also I've been helping to talk to kids, the

3   troubled kids that's been coming through the jail.  Where a

4   letter was obtained by the captain of the jail, verifying

5   that I had been doing that.

6          Part of my doing wrong, when I was out there, is

7   because I felt that I was supplying my kids with stuff that

8   I didn't have as a child myself.  Which, that's not a

9   correct thing that I should have been doing, due to the fact

10  because the time that I was away from my kids, to me that's

11  more meaningful and more cherishable than any material thing

12  I could have ever given them in my life.

13         And if I had a chance to go back and recorrect any

14  of this that I have done, I wouldn't do it again.  Because

15  my kids are suffering more than I am.

16         So, Your Honor, I ask that -- I understand that,

17  you know, I've got to go through something.  But I ask that

18  the Court be lenient on my behalf so I can get back out to

19  my kids and my family, and take care of them productively,

20  and become a productive citizen.

21         Because I've sat back, you know, and I've come to

22  realize that there's people that get up and work every day

23  that have kids that they can't give a child everything they

24  want.  It's what's the necessities in life is what's needed.

25              As I say, Your Honor, I'm 37 years old.  I have

1  two daughters because I don't consider step-daughter a step.

2  I consider that's my daughter.  They -- both of them

3  graduating next year.  And I would want nothing more than to

4  be able to share that experience with them.  Because I know

5  what it really means to not have your father around, fully,

6  you know, the way that a child should have.

7          So in closing, Your Honor, I would like to again

8  express my deepest apology for this situation.  And I accept

9  my responsibility fully.

10          THE COURT:  Thank you.

11          Mr. Gleason.

12          MR. GLEASON:  Thank you.  Your Honor, United

13  States and the defense have agreed to recommend to the Court

14  that, Your Honor, the two counts of aggravated identity

15  theft, that they be run concurrently with one another.  And

16  then by law be run consecutive to the Guideline range.

17          Your Honor, regarding the Guideline range offense,

18  the United States would ask for a sentence on the high end

19  of the advisory Guideline range, taking into consideration

20  the nature and circumstances of the offense under 18, U.S.

21  Code 3553(a).

22          Your Honor, this was a wide ranging fraud.  Your

23  Honor, the defendant stole the identities of individuals,

24  used those identities to create new accounts, overtook

25  existing accounts, and directly harmed those individuals, as

Laura Andersen, RMR 704-350-7493

1  well as institutions, corporations, that bore financial loss
2  from this activity.
3          Your Honor, in one case the defendant engaged in
4  social engineering with a woman to elicit from her, her pin
5  numbers to her accounts, then befriended her, and had used
6  that opportunity to take advantage of her, and to obtain her
7  pin numbers, and then later to steal her identity.
8          Your Honor, he made purchases based upon these
9  identities.  And, Your Honor, we think that that needs to be
10  considered in this case.
11          Also, Your Honor, the defendant's own personal
12  history and characteristics.  The PSR has his criminal
13  history.  And it's quite a long criminal history at that.
14  And we ask that the Court take that into consideration for
15  sentencing.
16          Also, Your Honor, to protect society from further
17  crimes of the defendant, as well as to promote respect for
18  the law, and also to underscore the seriousness of this
19  activity.  Some people think that white collar crime doesn't
20  hurt people, but it really does hurt people.
21          There are a lot of people here who have had their
22  credit damaged, had to spend time to repair their credit,
23  had their good name taken by this defendant, who rather than
24  working, has taken the easy way out.
25          So, Your Honor, we ask that the Court consider

1　these sentencing factors and sentence on the high end of the

2　advisory Guideline range, plus a consecutive two year

3　sentence pursuant to the Plea Agreement.

4　　　　　　　Additionally, Your Honor, we would like to note

5　that the victims were notified of this hearing.  I believe

6　there is a representative of one of the corporate victims

7　present today in court.  The other victims chose not to be

8　here.

9　　　　　　　Your Honor, also we're asking for restitution in

10　the amount reflected in the PSR, to the parties as listed in

11　the PSR.

12　　　　　　　And finally, Your Honor, at the appropriate time,

13　the United States would be moving to dismiss Count 1 of the

14　Bill of Indictment pursuant to the Plea Agreement.

15　　　　　　　THE COURT:  Thank you.

16　　　　　　　Any victims in the case care to make any public

17　comment?

18　　　　　　　MR. GLEASON:  No, Your Honor.

19　　　　　　　THE COURT:  Very well.

20　　　　　　　I've listened to the arguments of counsel, the

21　allocution of the defendant.  I've consulted the advisory

22　Guidelines, and have looked at the information contained in

23　the Presentence Report, as well as the testimony of Agent

24　Heath, prepared to state a sentence.

25　　　　　　　Pursuant to the Sentencing Reform Act of 1984, it

1    is the judgment of the Court, that the defendant, Anthony

2    Dewayne Mincey, is hereby committed to the custody of the

3    Bureau of Prisons, to be imprisoned for a term of 36 months

4    on Count Three.  And terms of 24 months each, on Counts Two

5    and Four.

6            The terms on Counts Two and Four to be served

7    concurrently with each other, but consecutive to the term

8    imposed on Count Three; for a total term of 60 months.

9            The sentence of 60 months is sufficient, but not

10   greater than necessary to accomplish the sentencing

11   objectives of Section 18, United States Code, Section

12   3553(a), including the need for the imposed sentence to

13   reflect the seriousness of the offense, promote respect for

14   the law, afford adequate deterrence, and very importantly in

15   this case, to protect the public from further crimes of the

16   defendant.

17           The identity theft crimes in this case were of an

18   extreme predatory nature, involved stealing individual

19   identities, creating bogus accounts, overtaking other

20   accounts, defrauding merchants, and was very extensive.

21           And it, when combined with the criminal history of

22   the defendant, which includes a lengthy history of financial

23   fraud, the fact that the defendant was on probation for

24   fraud from two different jurisdictions at the time he

25   committed the instant offense, it shows that there's a

1  substantial need to protect the public from further crimes

2  of the defendant.

3         Spent a fair amount of time in this sentencing

4  hearing, trying to identify under the Guidelines, who the

5  victims were for purposes of consulting the advisory

6  Guidelines.

7         But whether the victims qualify as people who have

8  suffered actual loss as a result of pecuniary harm, the

9  number of victims who were victimized by this crime spree is

10  substantial.

11         And regardless of what decision I made under the

12  Guidelines, the 60 month sentence imposed today is intended

13  by the Court to be the sufficient but not greater than

14  necessary point to accomplish the sentencing objectives of

15  18, United States Code, Section 3553(a).

16         Although the sentence attempts to accomplish all

17  the purposes of Section 3553(a), it is motivated

18  substantially by the need to protect the public from further

19  crimes of this defendant.

20         The Court does call to the attention of the

21  custodial authorities that the defendant has a history of

22  substance abuse, and recommends that he be allowed to

23  participate in any available substance abuse treatment

24  program while incarcerated; and if eligible, receive the

25  benefits of 18, United States Code, Section 3621(e)(2).

1        The Court further recommends that the defendant be

2    designated to a facility as close to Charlotte as possible,

3    consistent with the needs of the Federal Bureau of Prisons.

4        It is further ordered that the defendant be

5    required to support all dependents as outlined in the

6    Presentence Report from his prison earnings.

7        Upon release from imprisonment, the defendant

8    shall be placed on supervised release for a term of five

9    years.

10        This term consists of terms of five years on Count

11    Three.  And terms of one year each on Counts Two and Three.

12    All such terms to run concurrently.

13        Within 72 hours of release from the custody of the

14    Bureau of Prisons, the defendant shall report in person to

15    the probation office in the district to which he is

16    released.  And while on supervised release, the defendant

17    shall not commit another federal, state or local crime;

18    shall comply with the standard conditions that have been

19    adopted by the court in the Western District of North

20    Carolina.

21        It is further ordered that the defendant shall pay

22    to the United States, a special assessment of $300.

23        It is further ordered, having determined the

24    amount of restitution owed to each victim, that the

25    defendant shall make restitution as directed to the

1    following victims in the following amounts:

2            To Citi Group, 1,02372 -- $1,023.72.

3            Wachovia, $29,925.12.

4            Target $1,161.14.

5            G.E. Money Bank, $15,809.69.

6            Macy's $16,395.02.

7            Any payment made that is not payment in full,

8    shall be divided proportionately among the victims named.

9    The defendant is jointly and severally liable with his

10   co-defendant for the total amount of restitution.

11           It is further ordered, and the Court finds that in

12   light of the restitution award, special assessment, the

13   defendant does not have the ability to pay a fine or

14   interest, will waive payment of a fine and interest in this

15   case.

16           Payment of the criminal monetary penalties shall

17   be due and payable immediately.  The Court has considered

18   the financial and other information contained in the

19   Presentence Report and finds that the following is feasible.

20           If the defendant is unable to pay any monetary

21   penalty immediately, then during the period of imprisonment,

22   payment shall be made through the Federal Bureau of Prisons

23   Inmate Financial Responsibility Program.

24           And upon release from imprisonment, any remaining

25   balance shall be paid in monthly installments of no less

1    than $50, to commence within 60 days after release from

2    imprisonment until paid in full.

3            And throughout the period of supervision, the

4    probation officer shall monitor the defendant's economic

5    circumstances, and report to the Court with recommendations

6    as warranted, any material changes that affect his ability

7    to pay any court-ordered penalty.

8            Is there any legal reason why the sentence should

9    not be imposed as stated?

10           MR. GSELL:  No, Your Honor.

11           MR. GLEASON:  No, Your Honor.

12           THE COURT:  Let it be imposed.

13           I will dismiss Count One upon motion of the

14   government.

15           Mr. Mincey, you can appeal your conviction, if you

16   believe that your guilty plea was somehow unlawful or

17   involuntary, or if there is some other defect in the

18   proceeding that was not waived by your guilty plea.

19           You also have a right to appeal your sentence,

20   under certain circumstances, particularly if you think the

21   sentence is contrary to law.  Any notice of appeal must be

22   filed within ten days from the entry of judgment.

23           And if you are unable to pay the cost of an

24   appeal, you may apply for leave to appeal with no cost to

25   you.

Case 3:08-cr-00210-RJC   Document 57   Filed 11/06/09   Page 45 of 46

1          And if you request, the clerk of court will

2    prepare and file a Notice of Appeal on your behalf.

3          The Court recommends that you talk to your

4    attorney about these appeal rights, especially about the

5    impact on these rights of any waiver of appeal provision in

6    your Plea Agreement.

7          But do you understand these rights as I've just

8    read them to you?

9          THE DEFENDANT:  Yes, sir.

10         THE COURT:  Very well.

11         Anything further from either side?

12         MR. GLEASON:  No, Your Honor.

13         MR. GSELL:  No, Your Honor.

14         THE COURT:  Then this matter is concluded.

15   Mr. Mincey is remanded to the custody of the marshals at

16   this time.

17         MR. GSELL:  Thank you, Your Honor.

18         THE COURT:  Thank you.

19              (End of Proceedings.)

20                  *  *  *  *  *  *

     UNITED STATES DISTRICT COURT

21   WESTERN DISTRICT OF NORTH CAROLINA

     CERTIFICATE OF REPORTER

22         I, Laura Andersen, Official Court Reporter,

     certify that the foregoing transcript is a true and correct

23   transcript of the proceedings taken and transcribed by me.

          Dated this the 6th day of November, 2009.

24                      s/Laura Andersen

                        Laura Andersen, RMR

25                      Official Court Reporter

               Laura Andersen, RMR 704-350-7493